686 P.2d 837

**Carolyn FLEMING, Plaintiff-Appellant,**

v.

**Thomas R. HATHAWAY and Rayma Hathaway, Defendants-Respondents.**

**No. 14577.**

Court of Appeals of Idaho.

July 2, 1984.

Rehearing Denied Sept. 6, 1984.

158

Michael Howard Hinman, Jonathan Ellison, Lewiston, for plaintiff-appellant.

Rayma Hathaway, pro se.

Thomas R. Hathaway, pro se.

WALTERS, Chief Judge.

In this appeal we are asked to construe a section of the Idaho Code which governs the disposition of a security deposit paid by a tenant to a landlord. The tenant, Carolyn Fleming, paid a $100 security deposit to the landlords, Thomas and Rayma Hathaway, as provided in the Hathaways' standard form lease agreement. Later, Mrs. Fleming terminated her tenancy and requested return of the deposit. When the deposit was not returned she brought this action. In the magistrate division of the district court, the trial judge held the Hathaways were entitled to retain the deposit, as liquidated damages, under the parties' lease agreement. Accordingly, judgment was entered against Mrs. Fleming on her complaint. Mrs. Fleming appealed to the district court where the decision of the magistrate was affirmed. She then brought this appeal. We also affirm.

We are confronted with several issues in this appeal. First, did the Hathaways violate I.C. § 6–321 by retaining Mrs. Fleming's security deposit after the termination of her tenancy? [1] Second, what remedies

---

1. I.C. § 6–321 provides that:

 Amounts deposited by a tenant with a landlord for any purpose other than the payment of rent shall be deemed security deposits. Upon termination of a lease or rental agreement and surrender of the premises by the tenant all amounts held by the landlord as a security deposit shall be refunded to the tenant, except amounts necessary to cover the

are available against a landlord who violates I.C. § 6–321? Third, may a landlord assert a counterclaim for damages in an action by the tenant to recover a security deposit from the landlord? Fourth, was the forfeiture of the deposit in this case enforceable?

The provisions of the lease agreement between the parties, relating to the rental rate, the term of the lease and the security deposit, are as follows:

1) Rent: In return for the rental of 217 A South Garden Court, the tenant will pay $215 per month. The rent is due and payable to the account of the landlord at the bank designated at time of rental. Rent is paid in advance on the first day of every month. In the event rent is not paid by the fourth (4th) of each month, a late charge of $3.00 per day from the due date (1st of month) is automatically due. [Blanks completed in original.]

. . . . .

4) Deposit: The tenant shall give the landlord a total of $100.00 as deposit. The deposit is to cover breakage and damage to the property, furniture, and fixtures within it, except for ordinary wear and tear within it and depreciation; any cleanup necessary to return the property to the condition the tenant found it; to cover overstay, keys, unpaid utility bills, etc. Also, tenancy of less than 6 months. An attached schedule delineates specific cleanup charges. [Blanks completed in original.]

Less than one month after the parties had entered into the agreement and Mrs. Fleming had taken possession of the property, she informed the Hathaways of her intent to terminate the tenancy. In response, Mr. Hathaway told Mrs. Fleming that the lease was for a six-month period; that her early termination of the tenancy was a breach of the lease; and that the $100 deposit would

be forfeited as a result of that breach. After Mrs. Fleming vacated the premises, she requested, by letter, that the Hathaways return her security deposit. The Hathaways never complied with this request.

Mrs. Fleming brought suit to obtain the security deposit under I.C. § 6–320. That section states: "A tenant may file an action against a landlord for damages and specific performance for ... [f]ailure to return a security deposit as and when required by law...." Mrs. Fleming asserted that the lease was for a month-to-month tenancy and that she was entitled to a return of the full amount of her security deposit, following termination of the tenancy, because the Hathaways had failed to inform her in writing why they were retaining the deposit. The Hathaways, however, took the position that the lease was for a six-month period and that, because the lease allowed for forfeiture of the deposit if the lease was terminated early by the tenant, the written lease itself sufficed as notice to Mrs. Fleming as to why the Hathaways were retaining the deposit.

Following trial to the court, the magistrate entered findings of fact and conclusions of law and a judgment for the Hathaways. In its conclusions of law the court stated: "The written lease, together with Defendants' oral statement of forfeiture because of breach of lease, is a compliance with the written statement required by Idaho Code, Section 6–321." The court also held that the Hathaways were entitled to keep the deposit as "liquidated damages."

■ We address first the question of compliance with I.C. § 6–321. This statute plainly requires that, in the event less than the full amount of a deposit is returned, the landlord *must* provide the tenant with a "signed statement" itemizing the expend-

contingencies specified in the deposit arrangement.

Refunds shall be made within twenty-one (21) days if no time is fixed by agreement, and in any event, within thirty (30) days after surrender of the premises by the tenant. *Any refunds in an amount less than the full*

*amount deposited by the tenant shall be accompanied by a signed statement itemizing the amounts lawfully retained by the landlord, the purpose for the amounts retained, and a detailed list of expenditures made from the deposit.* [Emphasis added.]

itures made by the landlord and the purpose of those expenditures. Here the landlord failed to comply with the statute. A security deposit was provided by Mrs. Fleming when the lease agreement was entered into. The deposit fits the I.C. § 6–321 definition of security deposit, as it was "other than [a] payment of rent." This amount was not refunded to Mrs. Fleming within twenty-one days of the termination of her tenancy. Mrs. Fleming never received a signed statement accounting for the retained deposit. The lease agreement, by itself, does not suffice. We hold the magistrate erred in his conclusion that providing oral notice of a forfeiture and a signed copy of the lease constituted compliance with I.C. § 6–321.

We turn next to the consequences resulting from the landlords' violation of I.C. § 6–321. As noted, Mrs. Fleming brought her suit under I.C. § 6–320. She sought specific performance for the refund of her deposit. Had she also claimed damages, then I.C. § 6–317 might have allowed recovery—in the discretion of the trial court—of a judgment equal to three times the amount of any actual damages assessed. Further, she would be entitled to recover her costs and disbursements if judgment were entered in her favor for either specific performance or for damages. I.C. § 6–320(c). Finally, subject to the guidelines of I.R.C.P. 54(e), a prevailing tenant could also be awarded attorney fees for representation at trial. I.C. § 12–121.

The magistrate, however, held against Mrs. Fleming's claim for refund. The court concluded that the Hathaways were entitled to keep the deposit as "liquidated damages" because Mrs. Fleming had "breached" the lease by terminating it before six months had expired. Therefore, in order to determine whether Mrs. Fleming is entitled to any relief from the Hatha-

ways' violation of I.C. § 6–321, we must next decide the propriety of the magistrate's conclusion regarding "liquidated damages."

The right of the Hathaways to retain the security deposit was raised through the pleadings and the testimony of the Hathaways at trial. They had asserted, as an affirmative defense in their answer to Mrs. Fleming's complaint, that:

The provisions of IC 6–321 relating to security deposits are not applicable to this case, the defendants not having received any sums from the plaintiff as described in IC 6–321, and if the sum of $100.00 is determined by the trier of the fact herein to be in fact such a security deposit then the requirements of IC 6–321 are substantially complied with by the language of the written rental agreement signed by the plaintiff.

On inquiry by the trial judge, Mr. Hathaway explained that they had not "received any sums from [Mrs. Fleming] as described in I.C. § 6–321" because the $100 deposit was a sum to be forfeited in the event Mrs. Fleming terminated the tenancy before six months had expired. He testified that this was the purpose of the language in paragraph four of the lease: "The tenant shall give the landlord a total of $100.00 as deposit. The deposit is to cover. . . . [a]lso, tenancy of less than 6 months."

 Initially, we note it was proper for the judge to treat the Hathaways' affirmative defense as a counterclaim. I.R.C.P. 8(c). Moreover, we see no impediment in either section 6–320 or 6–321 to the assertion of a counterclaim for damages by a landlord in response to a tenant's complaint for recovery of a security deposit.[2] Indeed, such a counterclaim—if it arose from the same transaction, i.e., the tenancy agreement, which forms the basis for a

2. *Compare Hunter v. Porter,* 10 Idaho 72, 77 P. 434 (1904), holding that, in an unlawful detainer action by a landlord for possession of the leased premises, a claim by the tenant for unliquidated damages arising out of a breach of a covenant made by the landlord is not a proper matter for counterclaim or cross-action under the unlawful detainer statutes. *See also Richardson v. King,* 51 Idaho 762, 10 P.2d 323 (1932) *and Loughrey v. Weitzel,* 94 Idaho 833, 498 P.2d 1306 (1972). Here, the dispute between the parties is not for possession under the unlawful detainer statutes.

dispute over the security deposit—would be a compulsory one which could not be raised in a separate, independent action. *See* I.R.C.P. 13(a). We hold that the claim of a tenant to a refund of a security deposit may be subject to an offset for damages allowed to the landlord. Thus, procedurally, the issue of the forfeiture of the deposit properly was before the court in this case.

■ In her argument on appeal, Mrs. Fleming contends the provisions of the lease agreement relating to the term of the lease and the forfeiture of the deposit are unclear and ambiguous. She asks that we construe the lease against the Hathaways, who had prepared and provided the lease. *See Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975). However, in our opinion, the lease is sufficiently clear. Under its terms the tenant gave the landlord $100. That sum plainly served several purposes. It would cover anticipated damage to property, expense of cleanup, compensation for overstay (i.e., holding over after nonpayment of rent), expenses of replacing keys unreturned by the tenant, liability for unpaid utilities, and compensation in the event the lease was terminated in less than six months. Having determined the lease was not ambiguous, we turn next to the enforceability of the forfeiture provision.

■ It is well settled that forfeiture of money, property or a property right is not viewed favorably by the courts. If the "forfeiture" is simply a penalty invoked as a result of conduct of one of the parties, the forfeiture will not be allowed.

Generally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to actual damages. But, where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a "penalty," and the contractual provision therefor is void and unenforceable.

*Graves v. Cupic*, 75 Idaho 451, 456, 272 P.2d 1020, 1023 (1954). The burden of proving facts to show that damages provided for by such a contract amount to a penalty, either because the sum to be forfeited does not bear a reasonable relation to actual damages or because the agreed amount is exorbitant or unreasonable, rests upon the party seeking to invalidate the forfeiture provision. *Woodger v. AMR Corp.*, 106 Idaho 199, 677 P.2d 512 (Ct.App. 1984).

■ Here the magistrate made no specific finding concerning the "reasonableness" of the amount forfeited. The absence of such a finding, however, may be disregarded if the record yields an obvious answer to the relevant question. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982). Here, the answer is obvious. Mrs. Fleming, the party having the burden of proof, presented no evidence on this issue. Absent any contrary evidence, we deem the magistrate's determination—that the forfeiture should be enforced as liquidated damages—to implicitly constitute a finding that the forfeited deposit was reasonable.

We therefore uphold the magistrate's conclusion that the Hathaways were entitled to retain the deposit under a valid and enforceable forfeiture agreement. As a result, Mrs. Fleming's right to a refund under I.C. §§ 6–320 and 6–321 was subject to offset by the sum to be forfeited as compensation for the Hathaways' damages. The order of the district court, upholding the judgment entered in the magistrate division, is affirmed. Costs on appeal to the respondents, Hathaway.

BURNETT and SWANSTROM, JJ., concur.