736 P.2d 1340

**J. Max JONES & Margaret Jones, Plaintiffs-Counter Defendants-Appellants-Cross Respondents,**

v.

**W.B. WHITELEY & Shoulder 3 Ranches, Inc., Defendants-Counter Claimants-Respondents-Cross Appellants.**

No. 16428.

Court of Appeals of Idaho.

April 1, 1987.

Randolph Calvin Stone, Burley, for plaintiffs-counter defendants-appellants-cross respondents.

Kenneth L. Pedersen and Curtis Webb, Twin Falls, for defendants-counter claimants-respondents-cross appellants.

HUNTLEY, Judge, Pro Tem.

Max and Margaret Jones (hereinafter "Jones") brought suit against Whiteley for sums due on a contract. Whiteley counterclaimed for restitution of overpayment made to Jones in a previous transaction. The trial court found for Jones on a contract claim, but reduced his recovery by the amount of the overpayments. On appeal, Jones contends that the trial court's finding that an overpayment was made is not supported by the evidence; Whiteley's two-year delay in alleging an overpayment constitutes a bar to the counterclaim; the court erred in granting prejudgment interest on the alleged overpayment; and the court should have granted attorney fees to Jones on the contract claim. Whiteley cross-appeals arguing that the trial court erroneously invoked a "religious privilege" to exclude evidence regarding an alleged accord and satisfaction of the counterclaim.

On December 8, 1983, Whiteley failed to pay sums due to Jones under a grazing contract. Jones sued for these sums and for other amounts due on miscellaneous transactions. The trial court held that Jones was entitled to an aggregate recovery including prejudgment interest, of $44,306.61. This determination is not challenged on appeal. However, the trial court also held that Whiteley was entitled to a total credit of $31,755.89, resulting in a net judgment of $12,550.72. Whiteley's credit consisted in part of $16,276.40, plus prejudgment interest, which the court found that Whiteley had mistakenly overpaid Jones during a hay sale transaction dating back to 1980. Jones has challenged the allowance of a credit for this overpayment.

The facts surrounding the 1980 transaction are, essentially, as follows: On approximately October 1, 1980, Whiteley agreed to purchase a substantial quantity of second crop and third crop hay from Jones. The parties agreed that Whiteley could begin to haul the hay at any time. The record contains conflicting evidence regarding the amounts of hay hauled and the timing of the hauling. Marlin Dayley, a former employee of Whiteley and a witness for Jones, testified that he began hauling the hay in the spring of 1981. However, no weigh tickets for any hay hauled from Jones' premises are available prior to June 16, 1981. The weigh tickets show that Whiteley received 419.58 tons of second crop hay and 232.52 tons of third crop hay, for a total of approximately 650 tons of hay, received between June 16th and September 29th, 1981.

Jones argues that the weigh tickets do not account for all of the hay hauled, noting the testimony of Dayley that he began hauling hay prior to June 1981, which testimony was corroborated by Dayley's neighbors Robert Severe and Michael Cranney. Jones also cites to the payment settlement sheet of February 1982, wherein an estimate, dated June 1980, listed the total amount of hay to be hauled at 850 tons. Jones argues that the extra $16,276.40 payment is accounted for if the 850 tons were paid for, rather than only 650. Whiteley denied participating in this estimate.

Conversely, the record indicates that Dayley was only paid according to the totals on the weigh tickets. Those totals remain uncontradicted. Additionally, the testimony of Severe and Cranney, as well as that of Dayley, was questioned as possibly pertaining to hay transactions between Whiteley and Jones subsequent to 1981. Most importantly, Whiteley produced the settlement sheet of his account with Jones. Although that sheet contains an estimate, dated June 1980, that 850 tons were to be delivered to Whiteley, the sheet plainly indicates that only approximately 650 tons were delivered. Additionally, the settlement sheet indicates that the amount of $16,276.40 was inadvertently calculated twice to produce the total amount owing under the applicable terms of the agreement between Jones and Whiteley.

Our standard of review on appeal is clear. Where findings of fact are supported by substantial, competent, though conflicting, evidence, they will not be set aside on appeal. I.R.C.P. 52(a); *State v. Tierney*, 109 Idaho 474, 708 P.2d 879 (1985). In the instant case, the testimony of the witnesses presented on behalf of Jones was controverted. Moreover, the settlement sheet, the authenticity of which was not questioned by Jones, is evidence that a mathematical error led to a mistaken overpayment. The trial court's finding of a mistaken overpayment in the amount of $16,276.40 is supported by substantial, competent evidence and must be affirmed.

■ Jones next argues that Whiteley should not be entitled to an offset for the full amount of $16,276.40 because, under an equitable claim for restitution, the proper measure of damage is the benefit to the defendant from any unjust enrichment. Jones cites *Gillette v. Storm Circle Ranch*, 101 Idaho 663, 666, 619 P.2d 1116, 1119 (1980):

The measure of damages in a claim of unjust enrichment is the value of the benefit bestowed upon the defendant which, in equity, would be unjust to retain without recompense to the plaintiff. The measure of damages is not necessarily the value of the money, labor, and materials provided by the plaintiff to the defendant, but the amount of benefit the defendant received which would be unjust for the defendant to retain.

*Gillette*, is, however, inapplicable to the instant case. The rule in *Gillette* was fashioned to address instances where the pecuniary benefit to the defendant and loss to the plaintiff did not coincide. In *Gillette*, the parties entered into a lease agreement whereby plaintiff agreed to farm the leased land. Plaintiff was financially unable to exercise an option to buy the property and it was sold. Plaintiff then brought an action to recover the value of the fall work he had performed, partially on the theory of unjust enrichment. The Supreme Court held that the plaintiff had failed to prove the value, if any, of the fall work to defendant.

In the instant case, where one party has asserted the existence of a mistaken monetary payment as the sole basis of a claim for unjust enrichment, the amount of the mistaken payment establishes the pecuniary benefit to the defendant. Indeed, this truism is acknowledged both by legal treatise writers and by the courts of this state.

The Restatement of Restitution, §§ 1 and 20, provides that the proper measure of damage in a situation where there has been a mistaken overpayment is the amount of the overpayment.

[W]here a person who is indebted to another makes an overpayment under a mistake of fact, the payee would be unjustly enriched by the amount of the overpayment if he were permitted to keep it and the payor would be unjustly deprived of that amount if he were not permitted to recover it. Restatement of Restitution, § 1 comment d (1937).

A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess. Restatement of Restitution, § 20 (1937).

Additionally, in *Dursteler v. Dursteler*, 108 Idaho 230, 697 P.2d 1244 (Ct.App.1985), this Court recognized an "obvious correlation" between an amount mistakenly paid and "the resultant benefit conferred upon [the defendant]." 108 Idaho at 235, 697 P.2d at 1249. *See also Smith v. Smith*, 95 Idaho 477, 484, 511 P.2d 294, 301 (1973) (citing Restatement of Restitution § 1).

The trial court's order requiring restitution of the entire amount of the overpayment, $16,276.40, is affirmed.

■ Next, Jones argues that he has been unduly prejudiced by the trial court's award of prejudgment interest on the amount of $16,276.40 dating back to February 1982. Jones asserts that the sizable amount ($7,169.59) given as prejudgment interest is entirely due to Whiteley's own delay in bringing his counterclaim and

should not be permitted by this Court. Jones' assertions are unfounded. The trial court specifically found that Whiteley did not discover the mistaken overpayment until January 7, 1984, and was not, therefore, barred from recovering the amount of overpayment under the equitable doctrine of laches. The trial court further found that Jones did not detrimentally change his position in the mistaken reliance that he was entitled to the overpayment of $16,276.40. These findings refute any *equitable defense*, not only to recovery of the overpayment, but also to interest on the overpayment.

The question is narrowed to whether the law *allowed* recovery of prejudgment interest in these circumstances. The rule governing prejudgment interest on restitutionary awards is well-established:

> In an action for restitution, the plaintiff is entitled either to the value of the goods, rights and benefits at the time of their transfer, plus interest on said sum during the time of its detention, or to restoration of the property and rights plus damages during the time of the detention, based upon compensation for their use or rental value.

*Hixon v. Allphin*, 76 Idaho 327, 336, 281 P.2d 1042, 1047 (1955).

Where the sum due is "sufficiently definite," an award of prejudgment interest will be found to be proper. *Ace Realty, Inc. v. Anderson*, 106 Idaho 742, 751, 682 P.2d 1289, 1298 (Ct.App.1984). This state's Supreme Court has further articulated the rule:

> However, where the amount of liability is liquidated or capable of ascertainment by mere mathematical processes ... this Court has allowed interest from a time prior to judgment, for in that event the interest in fully compensating the injured

party predominates over other equitable considerations.

*Farm Development Corp. v. Hernandez*, 93 Idaho 918, 920, 478 P.2d 298, 300 (1970) (quoting *U.S. Fidelity and Guaranty Co. v. Clover Creek Cattle Co.*, 92 Idaho 899, 900, 452 P.2d 993, 1004 (1969)).

We have already ruled that the restitutionary award of $16,276.40 as an offset was "sufficiently definite" and a "reasonably certain" estimate of the benefit to Jones. Moreover, the overpayment was treated as a credit against sums owed to Jones, and the trial court had allowed prejudgment interest on *those* sums. By parity of reasoning, the trial court's award of prejudgment interest on the overpayment recovery was proper.

█ Jones next challenges the trial court's failure to award either party costs or attorney fees under I.R.C.P. 54(d)(1)(B).[1] The mandate of that rule is clear: The trial court is vested with the discretion to apportion costs and fees, taking into account counterclaims, cross-claims or other multiple issues. In *International Engineering Co., Inc. v. Daum Industries, Inc.*, 102 Idaho 363, 366–67, 630 P.2d 155, 158–59 (1981), the Supreme Court stated:

> [The] trial court is vested with broad discretion to determine the prevailing party in a multiple claim action. Here the record indicates that the trial court felt that because plaintiffs had prevailed on some claims and defendant Daum had prevailed on the claim regarding the ownership of the ... note, there was no overall prevailing party. We find no abuse of discretion in such decision. I.R.C.P. 54(d)(1)(A), which authorizes costs to the prevailing party, and I.C. § 12–120(2), which authorizes attorney fees to a pre-

---

1. The rule provides, in pertinent part, as follows:

In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties, whether there were multiple claims, multiple issues, counterclaims, third party claims, cross-claims, or other multiple or cross issues be-

tween the parties, and the extent to which each party prevailed upon each of such issue or claims. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained.

vailing party, are not applicable where, as here, there is no prevailing party.

The trial court noted that both Jones and Whiteley prevailed on their most significant claims, and also failed on a number of smaller claims. The trial court further noted that all of the claims were brought in good faith and were meritorious.

Jones urges that we "reconsider" *International Engineering, supra,* arguing that, if a joint trial of all permissible claims results in a court's failure to find one "prevailing party," the party's right to recover statutory attorney fees has been prejudiced. This, Jones argues, will result in the filing of fewer permissive counterclaims in favor of additional separate actions in an effort to secure statutory rights to attorney fees. We acknowledge that some incentive to split claims may exist where one carries a mandatory fee award under I.C. § 12–120 and the other carries a discretionary award under I.C. § 12–121. However, this incentive is narrowed by rules governing compulsory counterclaims and res judicata in the form of claim preclusion. In addition, the differing fee entitlements associated with competing claims may be considered by the court in exercising its discretion under Rule 54(d)(1)(B). We decline to limit the application of the rule. We affirm the trial court's finding of no "prevailing party" under the rule in this case.

■ Jones next argues that the trial court erred in failing to award $492.30 interest pursuant to I.C. § 28–22–104 for the amounts owing on the hay, hauled by the end of September 1981 and not paid for until February 20, 1982. The record fails to show that this claim of interest was presented below. It appears that Jones raised the issue for the first time on appeal. We will not consider it.

### THE CROSS–APPEAL

■ In his cross-appeal from the judgment, Whiteley challenges the trial court's failure to allow the admission of evidence regarding an alleged accord and satisfaction reached at a meeting sponsored by the parties' religious leaders. The trial court ruled that evidence of any such agreement was privileged under Idaho Rule of Evidence 505—the "religious privilege." We need not decide today whether statements made during religious meetings, designed to provide an alternative to adjudication of disputes, fall under "the religious privilege." Even if we assume, for the sake of argument, that the district court erred in excluding evidence of the alleged accord, the error could have no impact on the result of this case. An "accord" is a mutual agreement between the parties to give and to accept something in settlement of a debt. "Satisfaction" is the performance of that agreement. *Fairchild v. Matthews,* 91 Idaho 1, 415 P.2d 43 (1966); *Knoke v. Charlebois,* 107 Idaho 427, 690 P.2d 362 (Ct.App.1984). An underlying duty or debt is not discharged until the accord is satisfied. *Id.; W.F. Construction Co., Inc. v. Kalik,* 103 Idaho 713, 652 P.2d 661 (Ct.App. 1982). At oral argument, counsel for Whiteley admitted that the alleged accord had never been satisfied in this case. Therefore, it could not have constituted a bar to enforcement of Jones' original claim. *See generally* 1 Am.Jur.2d *Accord and Satisfaction* § 47 (1962). Therefore, any possible error due to the trial court's failure to admit evidence of the alleged accord would, at most, be harmless error and would not require reversal on appeal. I.R. C.P. 61.

For the foregoing reasons, the trial court's judgment is affirmed.

No costs or attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.