IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39757

| | | |
|---|---|---|
| MELALEUCA, INC., an Idaho corporation, | ) | |
| | ) | |
| | ) | Twin Falls, November 2013 Term |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | 2013 Opinion No. 8 |
| | ) | |
| | ) | Filed: February 7, 2014 |
| RICK FOELLER and NATALIE FOELLER, | ) | |
| | ) | |
| Defendants-Appellants. | ) | Stephen Kenyon, Clerk |
| | ) | |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County.  Hon. Jon J. Shindurling, District Judge.

The judgment of the district court is vacated and the case is remanded.

May, Browning & May, Boise, for appellants. James Justin May argued.

Thomsen Stephens Law Offices, PLLC, Idaho Falls and Ryan D. Nelson and Michael L. LaClare, Idaho Falls, for respondents. Ryan D. Nelson argued.

_____

J. JONES, Justice

In 1999, Rick and Natalie Foeller apparently[1] entered into an agreement with Melaleuca of Canada, Inc., under which the Foellers were to act as independent marketing executives in exchange for monthly commission payments. In 2008, the Foellers breached this agreement but Melaleuca continued to pay them commissions because it was unaware of the breach. Upon learning of the breach, Melaleuca sued to recover the payments it had made to the Foellers after they breached. The district court granted Melaleuca's motion for summary judgment, finding that under the forfeiture clause of its agreement with the Foellers, Melaleuca was simply excused from performing once the Foellers breached and ordered the Foellers to refund Melaleuca the commissions they received after their breach. The Foellers timely appealed, arguing that the

[1] Although both parties argue on appeal that the Foellers entered into a contract with the Respondent, Melaleuca, Inc., no signed copy of that agreement is contained in the record. The record does contain an unsigned copy of an agreement that counsel for the Foellers asserted below was entered into between the Foellers and Melaleuca of Canada, Inc. Neither party has raised this discrepancy on appeal, nor asserted that Melaleuca, Inc., is not the proper party in this case.

1

district court erred because the forfeiture clause is an illegal penalty and Melaleuca is required to prove damages. We vacate the district court's judgment and remand the case for further proceedings.

# I.
# BACKGROUND

Melaleuca, Inc., an Idaho corporation, produces and markets nutritional and cosmetic goods. Rick and Natalie Foeller are former Melaleuca contractors who reside in Ontario, Canada. The Foellers entered into an Independent Marketing Executive Agreement ("IMEA") with Melaleuca in September 1999 and became "independent marketing executives." Independent marketing executives are eligible to receive commissions and bonuses for "buying" Melaleuca's products and for enrolling new independent marketing executives with Melaleuca. Melaleuca calculates the commissions it pays to its marketing executives "based on a number of factors, including the products purchased within their Melaleuca organization, the number of their personal enrollees, their status as a marketing executive, the organizational volume of their Melaleuca business, and the Leadership Points that they generate through specified activities." Melaleuca pays its marketing executives monthly, "contingent upon whether they were in good standing throughout that entire month."

To remain in good standing, a marketing executive must comply with the IMEA, which contains a non-compete clause and several provisions dealing with competition and solicitation. The IMEA's "Policy 20" provides as follows:

> Marketing Executives are independent contractors and may be active in other business ventures while they are Marketing Executives for Melaleuca. However, . . . [i]t is a violation of this policy to recruit a Melaleuca Customer or Marketing Executive to participate in another business venture . . . .

In the event of a breach, the IMEA provides for a forfeiture of commissions under Policy 20(c)(i):

> Violation of any provision of this Policy 20 constitutes a Marketing Executive's voluntary resignation and cancellation of his/her Independent Marketing Executive Agreement, effective as of the date of the violation, and the forfeiture by the Marketing Executive of all commissions or bonuses payable for and after the calendar month in which the violation occurred.

Policy 20(c)(ii) provides for a similar forfeiture, requiring a refund of any commissions paid after a breach:

2

> If Melaleuca pays any bonuses or commissions to the Marketing Executive after the date of violation, all bonuses and commissions for and after the calendar month in which the violation occurred shall be refunded to Melaleuca.

The Foellers received monthly commission checks from Melaleuca. They received their last check from Melaleuca in October 2008 for September 2008 commissions. The Foellers do not dispute that at some point in 2008, in violation of Policy 20, they became involved with Melaleuca's competitor, Max International, and began enrolling Melaleuca customers in Max programs while still receiving Melaleuca commissions.[2] In November 2008, the Foellers ended their relationship with Melaleuca. After its relationship with the Foellers ended, Melaleuca learned of the Foellers' breach.

On April 29, 2009, Melaleuca filed a complaint seeking an injunction and damages.[3] Melaleuca alleged that the Foellers, "in violation of their agreement, and in violation of controlling law, used confidential and proprietary business information and trade secrets in an effort" to persuade other Melaleuca independent marketing executives and customers to leave Melaleuca and join Max International.

On July 9, 2010, Melaleuca filed a motion for summary judgment arguing that under Policy 20 of the IMEA, it was entitled to a return of commissions paid out to the Foellers from the time they first violated the IMEA in June 2008.[4] The Foellers countered that the amount requested by Melaleuca was incorrect and that Policy 20 was unenforceable. On December 1, 2010, the district court denied the motion, finding that a genuine issue of material fact remained as to what damages Melaleuca suffered as a result of the Foellers' breach of the IMEA.

---

[2] It is unclear when the Foellers began recruiting Melaleuca customers into Max programs. The district court stated that Melaleuca argued in its motion for summary judgment "that it was entitled to a return of commissions paid out to the Foellers from the time they first violated the IMEA in June 2008." The Foellers do not dispute this characterization, but on appeal, Melaleuca states that the Foellers "began recruiting Melaleuca Marketing Executives to join Max in July 2008, while still collecting commissions from Melaleuca and certifying that they were in compliance with the IMEA."

[3] In briefing to the trial court, Melaleuca explained that it was "entitled to choose the damages it wish[ed] to pursue . . . ." Yet, Melaleuca "was conservative," and did not pursue its right to attempt to recover for the loss of customers when the Foeller's actions "decimat[ed] its sales force and/or customer base." Instead, Melaleuca seeks "to recover only for the second way in which it was damaged by the Foeller's breach—the monthly commission payments wrongly paid to the Foellers after their breach of the IMEA, which Melaleuca had no obligation to make."

[4] On appeal, Melaleuca does not specify the months for which it sought to recover commissions, but does state that it is "entitled to recover precisely $23,856.41(CDN) in repayment of commissions paid for the months of and after the Foellers' breach." Based on its briefing in support of its Motion for Summary Judgment, it appears that Melaleuca seeks to recover commissions for the months of July, August, and September 2008, which were paid in August, September, and October 2008.

3

On October 19, 2011, Melaleuca filed a motion for reconsideration and on October 20, 2011, the Foellers filed a motion for summary judgment. On December 21, 2011, the district court granted Melaleuca's motion and entered judgment in its favor. It ordered the Foellers to pay $23,856.71 CDN, with interest. The Foellers timely appealed.

## II.
## ISSUES

1. Whether the Foellers are required to refund to Melaleuca the commissions it paid to them after they breached because their breach excused Melaleuca from performing.
2. Whether the amount of Melaleuca's damage equals the amount of commissions it paid to the Foellers after their breach.
3. Whether Policy 20 is an illegal penalty.
4. Whether the Foellers are entitled to an award of attorney fees under Idaho Code § 12-120(3).

## III.
## STANDARD OF REVIEW

When reviewing a trial court's grant of a motion for summary judgment, "this Court applies the same standard of review used by the district court in ruling on the motion." *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 441, 235 P.3d 387, 391 (2010). The Court exercises free review over questions of law. *Rhoades v. State*, 149 Idaho 130, 132, 233 P.3d 61, 63 (2010). "Interpretation and legal effect of an unambiguous contract are questions of law over which this Court exercises free review." *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 748, 9 P.3d 1204, 1214 (2000).

## IV.
## ANALYSIS

This Court must decide whether the district court erred in holding that Melaleuca is entitled to recover the commissions it paid to the Foellers after they breached Policy 20 of the IMEA. The district court initially denied Melaleuca's motion for summary judgment, holding that Policy 20 was an illegal penalty and that there was a material issue of genuine fact as to damages. On reconsideration, the court granted Melaleuca's motion. Essentially, the district court determined that because the Foellers were entitled to payment only if they complied with Policy 20, their breach of Policy 20 excused Melaleuca from performing and entitled Melaleuca to recover the commissions it paid to the Foellers when it apparently assumed that they were complying with Policy 20. The court also found that because Policy 20 simply excused Melaleuca from performing, it was not an illegal penalty. Thus, this appeal presents two core

4

inquiries: first, whether Melaleuca can recover because Policy 20 simply excused its performance, requiring the Foellers to refund the paid commissions while absolving Melaleuca of proving damages, and second, whether Policy 20's forfeiture clause is enforceable.

### A. Melaleuca cannot recover money it paid to the Foellers under an "excuse" theory and must prove damages.

The district court erred when it held that Melaleuca could recover the commissions paid to the Foellers because the Foellers' breach "simply excuse[d]" Melaleuca from paying. The court stated that because "the Foellers breached the contract, Melaleuca's performance, specifically that of payment of commissions to the Foellers, was excused." In the court's view, Melaleuca was entitled to recover those "commissions paid after Melaleuca's performance was excused because . . . . [i]f Melaleuca had learned of the breach earlier or for some other reason had not paid the commissions to the Foellers, they would not be entitled to any repayment under Policy 20(c)(i) and would have no damages under that provision." Because the district court's decision rests on contract interpretation, this Court reviews that decision freely. *Idaho Power*, 134 Idaho at 748, 9 P.3d at 1214. Thus, at issue is whether a plaintiff may recover damages for breach of contract on the theory that its performance would have been excused had it stopped performing when the defendant breached.

A plaintiff who wishes to recover for a breach of contract bears the "burden of proving the existence of a contract and fact of its breach . . . ." *Id.* at 747, 9 P.3d at 1213. Furthermore, even if the plaintiff establishes that he "has been legally wronged, he may not recover damages unless he has been economically 'injured.'" *Bergkamp v. Martin*, 114 Idaho 650, 653, 759 P.2d 941, 944 (Ct. App. 1988). Thus, "the measure of damage—as well as the fact of damage—must be proven beyond speculation." *Wing v. Hulet*, 106 Idaho 912, 919, 684 P.2d 314, 321 (Ct. App. 1984); *see also Gen. Auto Parts Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 859, 979 P.2d 1207, 1217 (1999) ("Damages must be proven with reasonable certainty.").

To avoid liability once the plaintiff meets its burden, the defendant must prove that its performance was legally excused. *Idaho Power*, 134 Idaho at 747, 9 P.3d at 1213. "If a breach of contract is material, the other party's performance is excused." *J.P. Stravens Planning Associates, Inc. v. City of Wallace*, 129 Idaho 542, 545, 928 P.2d 46, 49 (Ct. App. 1996). Thus, a party sued for damages may defend on the grounds that its performance was excused by the other party's material breach.

5

A plaintiff's duty to prove damages should not be conflated with a defendant's duty to prove a defense. Indeed, it would be "curious and inappropriate" to plead the breach defense as an affirmative ground for relief. *See id.* at 545, 928 P.2d at 49 n. 1. For example, in *J.P. Stravens*, the plaintiff sued the defendant to recover payments allegedly due under a personal services contract, but the district court held that the defendant was excused from paying because the plaintiff had breached the contract. *Id.* at 543, 928 P.2d at 47. On appeal, the plaintiff argued that to have been excused from performance, the defendant should have been required to prove damage from the breach. *Id.* at 545, 928 P.2d at 49. Rejecting that theory, the Court of Appeals noted that the plaintiff's argument "evidences a misunderstanding of the [defendant's] position and of governing contract law." *Id.* Because the defendant "did not seek an affirmative recovery" but instead "sought only a judgment relieving [it] of any obligation to pay [the plaintiff's] claimed fees," it "had no need to prove damages." *Id.* Thus, the excuse defense is not an appropriate means of seeking relief because excuse is unconcerned with damages, and the issue of damage is integral to affirmative recovery on a breach of contract claim.

Here, relying on *J.P. Stravens*, Melaleuca argues that "because the Foellers materially breached their commitment" it "had no obligation to continue performing, and therefore no commissions were 'due and payable' at any point after the Foeller's breach in July 2008." Melaleuca contends that because it was "excused" from performing, the Foellers must repay the commissions they received after they had breached the contract. Like the plaintiff in *J.P. Stravens*, Melaleuca conflates the plaintiff's duty to prove damages with the defendant's duty to prove defenses. By claiming that the Foellers' breach excused its performance and it can therefore recover commissions without proving damages, Melaleuca "curiously and inappropriately" attempts to use a breach defense as an affirmative ground for relief. Melaleuca maintains that had it known of the Foellers' breach when the breach first occurred, it could have stopped paying commissions to the Foellers because its performance would have been excused under Policy 20. Whether this hypothetical is correct is irrelevant—Melaleuca's horse is out of the barn. Despite Melaleuca's ignorance of the Foellers' breach, when it paid commissions to the Foellers, it performed. Thus, the question of whether Policy 20 would have excused Melaleuca from liability had it chosen not to pay commissions is theoretical.

Further, there is nothing in the IMEA that would allow retroactive application of an excuse remedy. Policy 20 merely provides that "Melaleuca reserves the right to cease paying

6

compensation." This is forward looking. Similarly, Provision 15 of the IMEA's Terms and Conditions states that a violation of the IMEA "may result, at Melaleuca's discretion, in forfeiture of commission and bonus checks or other payments . . . ." Aside from being a clear forfeiture provision, this is forward looking.

Because an excuse theory does not apply to Melaleuca's attempt to recover commissions it paid to the Foellers, it must prove that is suffered damages as a result of the Foeller's breach.[5] Here, the district court found that "based on the evidence presented in briefs and at oral argument, the proper amount of damages sought by Melaleuca was $23,856.41 CDN." Thus, the district court simply added up the value of the commissions that Melaleuca claims were improperly paid to the Foellers, reasoning that "[t]his amount . . . is the exact amount of damages suffered by Melaleuca as it represents commissions paid to the Foellers after the breach." Therefore, in the district court's view, Melaleuca's damages are equal to the commissions paid after the Foeller's breached.

The Foellers argue that Melaleuca has not presented any evidence of its damages, so there is a genuine issue of material fact and summary judgment was inappropriate. Melaleuca takes conflicting views on the issue of damages. On the one hand, in its original briefing in support of its motion for summary judgment, Melaleuca argued that "[b]ecause the amount of the damages under Policy 20(c)(1) depends upon the actual facts, and is not a fixed estimate made in advance, it is not a liquidated damages provision." Yet, on the other hand, and in the same briefing, Melaleuca argued that there is "an exact, one-to-one relationship between the harm suffered and the damages sought." Thus, Melaleuca attempts to claim that its damages are fact specific while also claiming that the facts are irrelevant because it was damaged in the specific amount of commissions paid.

Melaleuca argues to this Court that under Idaho cases like *Schroeder v. Rose*, 108 Idaho 707, 701 P.2d 327 (Ct. App. 1985), it was "not required to off-set the amount of an un-owed payment against any purported 'value'" it "might have received from the Foeller's pre-breach

---

[5] Melaleuca has argued on appeal that it is entitled to recover the payments it made to the Foellers under a mistake theory. However, there is absolutely no mention of a mistake theory in Melaleuca's memorandum seeking reconsideration. The memorandum repeatedly references "excuse" and "excused." Where a party fails to argue an issue to the district court in support of its position on a motion for summary judgment, we will not consider the issue on appeal. *Esser Elec. v. Lost River Ballistics Tech.*, 145 Idaho 912, 919, 188 P.3d 854, 861 (2008). Since the issue of mistake was not raised below, we will not consider it on appeal.

activities." This claim is based on the notion that sales play only a minor part in commission payments. Frank Vandersloot, the CEO of Melaleuca, claims in his affidavit that compensation is paid to a marketing executive for building, training, and motivating his or her business organization. Mrs. Foeller, however, counters that compensation is directly related to commissions and her affidavit is devoted to demonstrating that correlation.

Melaleuca's reliance on *Schroeder* is misguided. In *Schroeder,* a realtor sued a seller of real property to recover a commission he claimed the seller owed him, and the seller countered that the realtor had breached his fiduciary duty to the seller, thereby forfeiting his right to collect a sales commission. 108 Idaho at 709, 701 P.2d at 329. Thus, the seller raised the realtor's alleged breach as a defense. The Court of Appeals held that when a defendant raises a breach as a defense, he uses the plaintiff's breach "as a shield" rather than "a sword," and does not need to "prove actual injury or intentional fraud." *Id.* at 710, 701 P.2d at 330. Instead, the defendant need only show that if a breach occurred, the breach "was substantial and represents the failure of a condition precedent to collecting a commission," not that he suffered "actual injury." *Id.* If, however, the tables had been turned and the seller had sued the realtor for breach, it "would be pertinent" if the seller had actually been harmed. *Id.*

Here, unlike the defendant in *Schroeder*, Melaleuca is not raising breach as a shield. Instead, it uses the Foellers' breach as a sword because it alleges that it is entitled to recover damages. Thus, Melaleuca does not fall under the *Schroeder* holding that a party raising breach as a defense need only show that the breach "was substantial and represents the failure of a condition precedent to collecting a commission." Instead, it is "pertinent" if Melaleuca has been harmed and Melaleuca must therefore prove actual injury. One aspect of proving injury is demonstrating the basis of the commission payments. Since Melaleuca has failed to show that it suffered actual injury, there is a genuine issue of material fact as to damages.

**B. The record is insufficient to determine whether or not the forfeiture provision is an unenforceable penalty.**

The district court also erred when it held that the forfeiture clause of Policy 20 was not an illegal penalty because the record is insufficient to determine the clause's relationship to damages. "[I]t is for the trial court to determine under the facts of any particular case whether the amount stipulated as damages bears such a reasonable relation to the damages actually sustained as to be enforceable as a provision for liquidated damages." *Clampitt v. A.M.R. Corp.*, 109 Idaho

8

145, 148, 706 P.2d 34, 37 (1985). Here, the district court did not engage in fact finding to determine whether the clause is reasonably related to the damages actually sustained. Instead, the district court failed to properly consider damages and, in construing Policy 20, determined that the forfeiture provision "only entitles Melaleuca to repayment of commissions paid after Melaleuca's performance was excused because of the Foeller's breach and, therefore, is not a penalty." Thus, the district court made no specific finding on the reasonableness of the amount to be forfeited.

Parties to an agreement may fix damages in the event of breach, but this power is not without limits. "Historically, courts of equity developed a rule, later adopted by courts of law, that contractual clauses prescribing penalties for a breach of the contract would not be enforced because of the potential for over-reaching and unconscionable bargains." *Magic Valley Truck Brokers, Inc. v. Meyer*, 133 Idaho 110, 117, 982 P.2d 945, 952 (Ct. App. 1999). This rule exists today. "Modern courts continue to refuse to enforce contract clauses that appear designed to deter a breach or to punish the breaching party rather than compensate the injured party for damage occasioned by the breach." *Id.* Indeed, if a forfeiture is "simply a penalty invoked as a result of conduct of one of the parties, the forfeiture will not be allowed." *Fleming v. Hathaway*, 107 Idaho 157, 161, 686 P.2d 837, 841 (Ct. App. 1984); *see also Anderson v. Gailey*, 100 Idaho 796, 801, 606 P.2d 90, 95 (1980) ("We have long held in Idaho that the purpose of awarding damages for breach of contract is to fully recompense the non-breaching party for its losses sustained because of the breach, not to punish the breaching party.").

In Idaho, "where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a 'penalty,' and the contractual provision therefor is void and unenforceable." *Graves v. Cupic*, 75 Idaho 451, 456, 272 P.2d 1020, 1023 (1954) (overruled in part on other grounds by *Benz v. D.L. Evans Bank*, 152 Idaho 215, 268 P.3d 1167 (2012)). The party seeking to invalidate a forfeiture provision bears the burden of proving that the damages provided for by the provision amount to a penalty, either because the sum to be forfeited does not bear a reasonable relation to actual damages or because the agreed amount is exorbitant or unreasonable. *Howard v. Bar Bell Land & Cattle Co.*, 81 Idaho 189, 197, 340 P.2d 103, 107 (1959); *Fleming*, 107 Idaho at 161, 686 P.2d at 841.

Under the agreement between Melaleuca and the Foellers, when the Foellers violated Policy 20, they were required to refund to Melaleuca "all bonuses and commissions for and after the calendar month in which the violation occurred." There is evidence to suggest that the commission forfeiture provision exists simply to punish breaching parties. In his affidavit, Mr. Vandersloot states that "Melaleuca's ability to recover" these commissions serves a "deterrent effect" to prevent marketing executives from violating Policy 20 under the supposition that they will be paid twice: once by Melaleuca and once by a Melaleuca competitor for whom they are recruiting Melaleuca customers and marketing executives. Mr. Vandersloot claims that the forfeiture clause is necessary because without it, "[s]uch an enticement of double payment . . . would be too much for many to resist."

Furthermore, the Foellers argue that the commissions to be forfeited do not bear a reasonable relationship to Melaleuca's injuries. They contend that Melaleuca received a substantial benefit from the Foellers' work and that "the sale of products that led to the payment of [their] commissions resulted in sales to Melaleuca, through which it apparently obtained a profit totaling $132,319.77 for the month of September 2008." As discussed, Melaleuca maintains the position that its damage is equal to the commissions it paid after the Foeller's breached, so its damage is inherently related to the amount to be forfeited.[6]

As the parties' arguments demonstrate, the record is unclear as to whether the forfeiture provision is simply a penalty invoked to punish a breaching party and whether the provision bears a reasonable relationship to Melaleuca's damages, which are currently unknown. Once damages are determined, the district court can consider whether the forfeiture provision is an illegal penalty.

**C. The Foellers are not entitled to attorney fees.**

The Foellers seek attorney fees incurred on appeal under I.C. § 12-120(3), which provides that "in any commercial transaction . . . the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." I.C. § 12-120(3). Nonetheless, this Court generally does not award attorney fees when it remands an action

---

[6] Indeed, Melaleuca states that "in a case of mistaken payment, 'the amount of the mistaken payment establishes the pecuniary benefit to the defendant' and is the only proper measure of damages." (quoting *Jones v. Whiteley*, 112 Idaho 886, 888, 736 P.2d 1340, 1342, (Ct. App. 1987)). This line of reasoning comes from cases addressing equitable claims for restitution from unjust enrichment. *See Jones*, 112 Idaho at 888, 736 P.2d at 1342. As previously discussed, the Court will not consider Melaleuca's restitution-based arguments, because Melaleuca did not make a claim for restitution in its complaint, nor did it argue restitution to the district court.

for a finding of material fact because it does not consider any of the parties to the appeal as having "prevailed." *See Bott v. Idaho State Bldg. Auth.*, 122 Idaho 471, 481, 835 P.2d 1282, 1292 (1992). Accordingly, the Court will not award the Foellers their attorney fees because the action will be vacated and remanded to the district court for a finding on the issue of damages.

## V.
## CONCLUSION

We vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion. The Foellers are awarded their costs on appeal.


Justice HORTON and Justice Pro Tems SCHROEDER, KIDWELL and BEVAN CONCUR.