759 P.2d 941

Richard J. **BERGKAMP** and Marilyn Bergkamp, husband and wife, dba Alpine Mexico Saloon, Plaintiffs–Appellants,

v.

Michael A. **MARTIN** and Karen T. Martin, husband and wife, Defendants–Respondents.

and

Thomas Carrico dba the Alpine Saloon; Gruener, Inc., an Idaho corporation; SNT, Inc., an Idaho corporation, Defendants.

No. 16492.

Court of Appeals of Idaho.

July 29, 1988.

Rehearing Denied July 29, 1988.

---

Thomas C. Praggastis, Roark, Donovan, Praggastis, Elkins & Phillips, Hailey, for plaintiffs-appellants.

Robert M. Tyler, Jr., Elam, Burke & Boyd, Boise, for defendants-respondents.

### SUBSTITUTE OPINION

The Court's prior opinion, dated December 4, 1987, is hereby withdrawn.

BURNETT, Judge.

This is the third appeal in an action for wrongful eviction of tenants from commercial property in Ketchum, Idaho. The issue presented this time is whether the district court correctly found that the terminated leasehold had no compensable value. For reasons explained below, we vacate the judgment and remand the case again.

### I

The facts are fully set forth in prior appellate opinions. *See Bergkamp v. Carrico,* 101 Idaho 365, 613 P.2d 376 (1980) (hereinafter cited as *Bergkamp I*), and *Bergkamp v. Carrico,* 108 Idaho 476, 700 P.2d 98 (Ct.App.1985) (hereinafter cited as *Bergkamp II*). They will be summarized briefly here. In 1974 the parties or their predecessors entered into a commercial lease. As tenants, Richard and Marilyn Bergkamp were to operate a restaurant on the premises. The lease called for a minimum rent of $350 to be paid monthly. In addition, annual payments were to be made of a percentage of gross sales in excess of $100,000 per year. The Bergkamps never achieved gross sales of $100,000 in a given year. Perhaps for this reason, the owners decided to evict the Bergkamps by locking them out of the premises, thereby effectively terminating the tenancy. This occurred in December, 1978. Michael and Karen Martin later acquired the property. They inherited the lawsuit precipitated by their predecessors' eviction of the Bergkamps.

The first appeal in this lengthy litigation presented the question whether the eviction had been wrongful. In *Bergkamp I* our Supreme Court held the written lease to be ambiguous. The case was remanded for judicial construction of the lease, based on the parties' underlying intent. The district court, Hon. Daniel B. Meehl, construed the lease and held that it did not authorize a termination of the type that had occurred here. Judge Meehl concluded that the landlords had acted wrongfully. This conclusion was not challenged in any subsequent appeal.

Judge Meehl also addressed the question of damages. Sitting without a jury, he took evidence and awarded $72,324—a figure which he found to be the fair market value of the leasehold remaining after the date of the wrongful eviction. The landlords appealed. In *Bergkamp II* we held that Judge Meehl had determined the damage award erroneously. We vacated the award and remanded with instructions on valuing the remaining leasehold.

The case then was assigned to the Hon. Daniel C. Hurlbutt. Judge Hurlbutt heard testimony from two different experts. Apparently, he accepted the analysis of the landlords' expert, who testified that the leasehold after the date of eviction had no fair market value. Based on this appraisal, the judge awarded no damages for the terminated tenancy. The instant appeal followed.

### II

The tenants now contend that Judge Hurlbutt erred because he failed to assign a monetary value to the "use and occupancy" of the premises which the tenants would have enjoyed had the lease not been terminated. In contrast, the landlords contend that no error occurred because our decision in *Bergkamp II* precluded any recovery other than for the fair market value of the remaining leasehold. Thus, the landlords would have us hold that any issue regarding "use and occupancy" has been foreclosed, even in our Court, by the doctrine of the "law of the case."

We believe the landlords' reliance upon "law of the case" is misplaced. The doctrine is an expression of judicial policy. It "is not an inexorable command." *Wm.*

*G. Roe & Company v. Armour & Company,* 414 F.2d 862, 867 (5th Cir.1969). When an appeal is filed after proceedings on remand, an appellate court may, if necessary to prevent manifest injustice, determine whether its prior decision was defective. *Id. Accord Sibley v. Jeffreys,* 81 Ariz. 272, 305 P.2d 427 (1956); *Greene v. Rothschild,* 68 Wash.2d 1, 414 P.2d 1013 (1966). However, in this case, as we will explain, the problem on remand from *Bergkamp II* was not that our decision harbored a particular defect but that it was given an unintended interpretation. We regret that our opinion apparently engendered such misunderstanding.

In *Bergkamp II* we stated that a wrongfully evicted tenant "is entitled to recover the fair market value of the remainder of the lease, plus any other losses directly occasioned by the termination." 108 Idaho at 478, 700 P.2d at 100. We further explained that the "[f]actors to be considered in valuing the leasehold include—but are not limited to—the fair rental value of the unexpired portion of the lease and the rent reserved (i.e., the rent which the tenant would have paid if termination had not occurred)." *Id. Accord* 11 S. WILLISTON, WILLISTON ON CONTRACTS § 1404 (3d ed.1968); RESTATEMENT (SECOND) OF PROPERTY § 10.2 (1977) (hereinafter cited as "Second Restatement"). We did not say that the fair market value of the remaining leasehold was the *exclusive* measure of damages for a wrongfully terminated tenancy. Indeed, we cited language to the contrary in the Second Restatement.

We then focused on the Bergkamps' particular situation. We noted that expert witnesses had examined the Ketchum commercial rental market and had established a fair rental value for the premises at issue here. We further noted that the Bergkamps' restaurant operation had "not provide[d] income commensurate with the postulated rental value of the premises." 108 Idaho at 479, 700 P.2d at 101. Consequently, it was clear that the Bergkamps could not receive a damage award based on the postulated rental value unless they could have realized such value by subleasing the premises or assigning the leasehold to someone else. We observed that Judge Meehl had adopted this approach, treating the leasehold as "a saleable item." However, the judge had failed to consider the adverse impact of a prohibition in the lease against subleasing or assigning without consent. We remanded the case for reconsideration and said:

> [T]he value of the leasehold should be ascertained by factors bearing directly on the tenancy. As we have explained, these include the fair rental value of the property and the rent reserved under the lease. Accordingly, we instruct the district court on remand to consider the fair rental value and the rent to be paid.... As noted above, the court must also weigh the effect of the contractual prohibition against subleasing or assigning without the landlord's consent.

*Id.* at 480, 700 P.2d at 102.

On remand, Judge Hurlbutt heard testimony that the landlords would not have given their consent to an assignment or sublease and, absent such consent, any potential new tenant would have found the property unattractive due to the risk of litigation. Accordingly, Judge Hurlbutt found that the Bergkamps could not have realized the postulated rental value of the premises by assigning or subleasing.

The next question should have been whether the remaining leasehold had some lesser—but nevertheless actual—value to the Bergkamps based on their own tenancy as operators of the restaurant. Judge Hurlbutt did not reach this question. Implicitly accepting the landlords' argument that *Bergkamp II* had precluded any recovery other than for the fair market value of the leasehold, the judge concluded that the leasehold was valueless. As we have noted, he entered a judgment awarding no damages to the tenants.

The tenants may have contributed to their own misfortune in this regard. Although their argument in this appeal has referred to damages for lost "use and occupancy," they also urged in the district court that the leasehold be valued according to

its full market potential. In effect, the tenants were asserting their pre-*Bergkamp II* claim of damages based on a value that could be realized from sublease or assignment, despite the restriction imposed by the consent requirement.

With due respect to the parties, their able counsel and the learned trial judge, we think that misinterpretation of *Bergkamp II*—coupled, perhaps, with confusion over the exact nature of the tenants' damage claim—resulted in a failure to address the question of damages based on the tenants' own use of the property. If the tenants could not fully realize the market value of the remaining leasehold, due to the restriction on sublease or assignment, our decision in *Bergkamp II* left open the alternative of valuing the leasehold according to the pecuniary benefits that could have been derived by the tenants from continuing their restaurant operation. The trial court could have determined the income likely to be generated by the tenants' restaurant during the remainder of lease. After deducting the expenses of running the restaurant and the rent the tenants would have been required to pay, the court could have determined the value of the remaining leasehold with the Bergkamps themselves as tenants. That figure, reduced to present value on the date of the wrongful eviction, and then augmented by prejudgment interest, would have represented an appropriate damage award. *See Bergkamp II*, 108 Idaho at 480–82, 700 P.2d at 102–04. Valuing the leasehold in this fashion would have been functionally similar to allowing recovery of lost profits, as authorized by the Second Restatement at § 10.2(5).

The present record does not contain enough information for us to compute the appropriate recovery (if any). The trial court did not find, and we cannot determine from the record, whether the restaurant ever generated revenue in excess of its operating expenses and the rent payable under the lease. We do know that the restaurant failed to generate more than $100,000 per year in gross revenue. But this fact alone does not necessarily mean that the tenants were losing money—i.e., that the tenants were realizing no economic value from the lease. Nor does it necessarily mean that the tenants would have continued to lose money over the remainder of the lease. If it were shown that the tenants would have operated profitably, albeit on gross sales of less than $100,000 per year, then the remaining leasehold would have had a positive economic value to them and they would have been entitled to compensation for its loss.

On the other hand, if the tenants would not have received an economic benefit from the lease, and if they could not have obtained such a benefit by subleasing or assigning the leasehold to others, then the termination of the lease would have carried no adverse economic consequence for them. They would not now be entitled to an award of damages. Although a plaintiff has been legally wronged, he may not recover damages unless he has been economically "injured." *See* 5 A. CORBIN, CORBIN ON CONTRACTS § 1003 (1964). If he wishes to protect some noneconomic interest in a contract, then he may pursue another remedy such as injunctive relief or specific performance. In this case, however, the tenants have sought only damages.

### III

We conclude that the case must be remanded for consideration of damages based on the tenants' own use of the property. As guidance on remand, we now consider other issues relating to the tenants' damage claim.

Whenever damages are sought for lost profits, the rule on mitigation of damages may be applicable. Second Restatement § 10.2, comments f and i. In this case, if the Bergkamps' restaurant could have been reopened elsewhere in Ketchum, at a location of comparable quality and comparable rental cost, such relocation might be deemed a reasonable means of mitigating damages. But if—as the record strongly suggests—the available alternative sites would have involved significantly higher rental payments, making any reloca-

tion commercially unfeasible, then mitigation would not have been required. Of course, if no lost profits are shown, the mitigation issue need not be addressed.

Next we consider the landlords' argument that even if *Bergkamp II* did not bar an award of damages based on the tenants' own use of the property, that issue should be decided against the tenants in this appeal because to date they have adduced no specific proof of lost profits. As we have acknowledged, the record is indeed undeveloped on this point. However, we decline to extinguish the tenants' claim at this time on the ground that they have failed to meet their burden of proof. The parties' apparent misunderstanding of *Bergkamp II* may have unduly narrowed counsel's perception of the issues to be addressed, and the evidence to be presented, before Judge Hurlbutt. Although the tenants ultimately may be unable to meet the burden of proving lost profits, we think justice would be better served if they were given a chance to do so when the issue is squarely framed. *Cf. Golden Condor v. Bell,* 106 Idaho 280, 678 P.2d 72 (Ct.App.1984) (substantive justice must be considered in deciding whether to grant opportunity to develop record on remand).

 Finally, the landlords argue that the tenants have waived any opportunity to present evidence of lost profits. The landlords quote passages from a trial brief apparently filed by the tenants after the Supreme Court's remand in *Bergkamp I.* In these passages, an attorney then representing the tenants described lost profits as "speculative." He urged the trial court not to consider them, but to consider the fair market value of the lease, in determining the damage award.

Waiver is a voluntary relinquishment of a known right. *Brand S Corporation v. King,* 102 Idaho 731, 639 P.2d 429 (1981). On the record before us we find it difficult to determine whether such a relinquishment has occurred. The quoted trial memorandum has never been made part of the record, either in this appeal or in *Bergkamp II.* Moreover, the trial memorandum apparently was filed after Judge

Meehl had issued a memorandum opinion in November, 1981, indicating his intention to award damages based on the "fair market value of the leasehold." By urging the court not to consider lost profits, the tenants' counsel may have been following the judge's lead. On this record we decline to hold that the tenants have waived any entitlement to damages based on lost profits. Of course, the district judge on remand may reexamine the waiver issue if it is presented to him on a fuller record.

The judgment of the district court is vacated. The case is remanded for further proceedings consistent with this opinion. Costs to appellants. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.