IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42173

MICHELLE CAMPBELL,

    Plaintiff-Cross-Defendant-Respondent,

v.

PARKWAY SURGERY CENTER, LLC,

    Defendant-Cross Claimant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Pocatello, May 2015 Term

2015 Opinion No. 74

Filed: July 23, 2015

Stephen W. Kenyon, Clerk

_____

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge, Hon. Robert C. Brower, Magistrate Judge.

District court decision affirming magistrate court order granting relief on breach of contract claim, affirmed in part, reversed in part, and remanded.

Paul J. Stark, Meridian, argued for appellant.

Holden, Kidwell, Hahn & Crapo, PLLC, Idaho Falls, for respondent. Deanne Casperson argued.

_____

BURDICK, Chief Justice

This appeal arose out of the Bingham County district court's decision affirming the magistrate court's order granting Michelle Campbell relief on her breach of contract claim. This case stems from an employment offer Parkway Surgery Center, LLC (Parkway) made to Campbell. That employment offer included assurances that Parkway would "take care of" a loan Campbell had with her previous employer, Bingham Memorial Hospital (BMH). When Parkway refused to pay the obligation as promised, Campbell filed suit for a breach of contract. Following a bench trial, the magistrate court ruled in favor of Campbell and awarded her damages in the amount of the loan plus interest. Parkway appealed to the district court, which affirmed the magistrate's order, but remanded to the magistrate court to reform the judgment to grant Campbell specific performance. Parkway appealed to this Court.

On appeal, Parkway makes several arguments, including that the district court erred when it (1) affirmed the magistrate court's order; (2) determined Campbell was entitled to specific

performance; (3) determined the statute of frauds did not apply in this case; and (4) awarded attorney fees to Campbell. We affirm in part, reverse in part, and remand.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Michelle Campbell was employed by BMH in Blackfoot, Idaho. On June 25, 2002, the BMH Foundation (the Foundation) offered, and Campbell accepted, a "Tuition Scholarship" in the form of a Forgivable Loan Agreement (the loan). Under the terms of the loan, the Foundation gave Campbell $6,800.00 to pay the tuition for her nursing degree in exchange for Campbell's promise to continue her employment with BMH for a specified number of years. The loan further provided that if Campbell failed to comply with the loan's terms, she would be required to repay to the Foundation the full amount of the loan plus interest.

In the Spring of 2003, individuals associated with Parkway contacted Campbell and asked her if she would be interested in joining the nursing staff at Parkway. Campbell expressed interest in the proposal on the condition that Parkway would satisfy Campbell's loan from the Foundation. Around May 1, 2003, at a board meeting, Parkway's Board of Directors instructed its agents, Arthur McCracken and Nanette Hirschi, to offer Campbell a nursing position at Parkway. The Board of Directors also informed the two agents that Parkway would "take care of" Campbell's obligation to the Foundation. The Board of Directors did not mention any restrictions or further conditions other than Campbell accept employment with Parkway. A second board meeting was held during the first week in May of 2003, where McCracken, Hirschi, and Campbell were present. At that meeting, Parkway offered Campbell a position with Parkway's nursing staff. Campbell expressed concern about her financial obligation to the Foundation if she were to leave her employment with BMH. McCracken assured her in general terms that the loan would be taken care of with no further conditions or restrictions relating to the payment of that obligation. Campbell subsequently accepted Parkway's offer of employment under those conditions, tendered her resignation to BMH, and began work for Parkway in May of 2003.

In February of 2005, Campbell learned that Parkway did not pay off the loan to the Foundation as promised. At that time, Campbell allegedly received a telephone call asking her to repay the loan because she was in default. Campbell subsequently sent a demand letter to Parkway requesting Parkway fulfill its promise. When Parkway refused to pay off the loan to the Foundation, Campbell brought suit against Parkway.

The magistrate court entered its findings of fact and conclusions of law on July 31, 2012, granting Campbell relief on her breach of contract claim and dismissing all counterclaims and cross-claims. The magistrate court ruled that Parkway's offer of employment to Campbell, which included the promise to pay Campbell's debt to the Foundation, was a binding contract between Parkway and Campbell. The court concluded that "there appears to have been a clear 'meeting of the minds' [] on the matter with a clear intent on the part of both contracting parties (Parkway, through its agents, and Ms. Campbell) to create a legally binding and enforceable relationship." The magistrate court went on to rule that because Parkway refused to pay Campbell's debt as promised, Parkway breached its contractual obligation to Campbell. Consequently, the magistrate court ordered Parkway to pay Campbell $6,800.00 plus any accumulated interest. The court ordered Parkway to make the payment directly to Campbell, noting that it assumed Campbell would tender the amount to the Foundation to extinguish her loan obligation to them and to rehabilitate her reputation in the medical community. Parkway appealed that decision.

The district court remanded the case back to the magistrate court because it determined that the magistrate court had not addressed all the claims for relief the parties asserted in the cause of action. The district court directed the magistrate court to enter amended findings of fact and conclusions of law dealing with the omitted claims, which included breach of implied covenant of good faith and fair dealing, tortious interference with contract, and constructive fraud claims. On remand, the magistrate court denied all three claims as unsupported by the facts, and entered its second amended judgment on November 27, 2013, to reflect those rulings. Campbell then filed a cross-appeal, and Parkway filed a Notice of Continuing Appeal.

On April 16, 2014, the district court entered its Decision and Order on Appeal, which affirmed the breach of contract claim but remanded the case to the magistrate court to reform the judgment to grant Campbell specific performance. The district court concluded that the magistrate erred in awarding damages to Campbell because she did not suffer an economic injury. The district court affirmed all other findings from the second amended judgment, except for those findings regarding Campbell's claim that Parkway breached the covenant of good faith and fair dealing. Parkway timely appealed to this Court.

## II. ISSUES ON APPEAL

1. Whether the district court erred in affirming the magistrate's decision finding in favor of Campbell on her breach of contract claim.

3

2. Whether the district court erred ordering the magistrate court to reform its judgment to grant Campbell specific performance.

3. Whether the district court erred in affirming the magistrate's award of attorney fees and in awarding attorney fees to Campbell on appeal.

4. Whether either party is entitled to attorney fees on appeal.

## III.  STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its appellate capacity, the standard of review is as follows:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013) *quoting Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Thus, this Court does not review the magistrate court's decision directly. *Id.* at 859, 303 P.3d at 218. Instead, we are procedurally bound to affirm or reverse the district court's decision. *Id.* This Court exercises free review over questions of law. *In re Estate of Peterson*, 157 Idaho 827, 830, 340 P.3d 1143, 1146 (2014).

## IV.  ANALYSIS

On appeal, Parkway argues that the district court erred when it affirmed the magistrate court's decision in favor of Campbell on her breach of contract claim and when it ordered the magistrate to reform the judgment to grant Campbell specific performance. Parkway also asserts that the district court erred in affirming the magistrate court's award of attorney fees to Campbell and that the district court erred in awarding attorney fees to Campbell on appeal. Both parties request attorney fees on this appeal. We address each issue in turn.

**A. The district court did not err in affirming the magistrate's decision finding in favor of Campbell on her breach of contract claim.**

Parkway asserts several groundless arguments as to why the district court erred when it affirmed the magistrate court's decision in favor of Campbell on her breach of contract claim. First, Parkway asserts that Campbell did not have standing to litigate the breach of contract claim. Second, Parkway argues that Campbell received the "benefit of her bargain" with Parkway and therefore did not suffer any injury. Finally, Parkway argues that the district court erred in concluding that the statute of frauds did not apply in this case.

4

### 1. Campbell had standing.

Parkway asserts that Campbell did not have standing in this matter because she has not suffered a distinct and palpable injury and because she is asserting claims of a third party. Campbell argues that Parkway either waived or should be estopped from asserting standing on this appeal because Parkway did not raise the issue below.

Generally, this Court does not consider issues raised for the first time on appeal. *State v. Rogers*, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004). However, because the issue of standing is jurisdictional, it can be raised at any time, including for the first time on appeal. *Arambarri v. Armstrong*, 152 Idaho 734, 738, 274 P.3d 1249, 1253 (2012). Furthermore, this Court has a duty to raise the issue of standing *sua sponte*. *Id.* Thus, Campbell's arguments that Parkway either waived or should be estopped from asserting standing on this appeal fail, and we will consider the merits of Parkway's standing argument.

In *Young v. City of Ketchum,* this Court noted:

Standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated. To satisfy the case or controversy requirement of standing, a litigant must allege or demonstrate an injury in fact and a substantial likelihood the relief requested will prevent or redress the claimed injury. This requires a showing of a distinct palpable injury and fairly traceable causal connection between the claimed injury and the challenged conduct.

137 Idaho 102, 104–105, 44 P.3d 1157, 1159–1160 (2002) (internal citations and quotations omitted). Thus, to satisfy the requirement of standing, a litigant "must allege or demonstrate a distinct palpable injury in fact; that the injury is fairly traceable to the challenged conduct; and that there is a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Arambarri*, 152 Idaho at 738, 274 P.3d at 1253. This Court has defined the term "palpable" as "[e]asily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest." *Id.* at fn. 3 (quoting *Black's Law Dictionary*, 1110 (6th ed. 1990)).

Parkway contends that it never actually damaged Campbell because she testified at trial that she had never received a demand letter from the Foundation or paid anything to the Foundation on her loan obligation. Parkway asserts this testimony is fatal to her standing because she has failed to show a "distinct and palpable injury." Parkway cites to *Bergkamp v. Martin*, 114 Idaho 650, 653, 759 P.2d 941, 944 (Ct. App. 1988), to support its argument and asserts that under established principles of contract law, a party cannot bring suit for breach of contract when

the party has not been injured.[1] Parkway could not be more wrong. First, *Bergkamp* is inapplicable because that case dealt with whether tenants were able to recover damages for wrongful eviction;[2] it did not address the issue of standing. *Bergkamp*, 114 Idaho at 653, 759 P.2d at 944. Second, and more importantly, whether a party has standing to sue on a contract and whether that party is entitled to damages are two distinct issues. Parkway has confused the injury necessary for standing with the obligation of proving damages as an element of a breach of contract claim.

For purposes of standing, the issue is not whether Campbell paid anything out of pocket on her obligation to the Foundation or whether the Foundation sent Campbell a demand letter. Rather, a party need only show either privity or third-party beneficiary status to have standing to sue on a breach of contract. *See Wing v. Martin*, 107 Idaho 267, 272, 688 P.2d 1172, 1177 (1984);[3] *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App. 2012) ("Under the general law of contracts, a party must show either privity or third-party-

---

[1] Parkway also cites to two other cases for the proposition that a party does not have standing to sue and assert the rights of a third party to a contract. However, both cases are inapplicable here. First, Parkway cites to *State v. Doe*, 148 Idaho 919, 936, 231 P.3d 1016, 1033 (2010), which dealt with the issue of whether a minor had standing to contest the constitutionality of a statute on grounds that it infringed on his parents' rights. Because *Doe* dealt with third-party standing in a constitutional challenge rather than standing in a breach of a third-party beneficiary contract, that case does not apply here. Parkway's reliance on *Arambarri*, 152 Idaho at 738–39, 274 P.3d at 1253–54, is also misplaced. There, a former employee sought reinstatement for himself and three other co-workers who were not parties to the action. *Id.* Because that case did not involve the standing of an individual who was party to a third-party beneficiary contract, that case is also inapplicable. In citing these cases, Parkway ignores well-established contract law that allows both a promisee and a third-party beneficiary to enforce a third-party beneficiary contract.

[2] Specifically, the Court there stated:

> On the other hand, if the tenants would not have received an economic benefit from the lease, and if they could not have obtained such a benefit by subleasing or assigning the leasehold to others, then the termination of the lease would have carried no adverse economic consequence for them. They would not now be entitled to an award of damages. Although a plaintiff has been legally wronged, he may not recover damages unless he has been economically "injured." *See* 5 A. CORBIN, CORBIN ON CONTRACTS § 1003 (1964). If he wishes to protect some noneconomic interest in a contract, then he may pursue another remedy such as injunctive relief or specific performance. In this case, however, the tenants have sought only damages.

*Bergkamp*, 114 Idaho at 653, 759 P. 2d at 944.

[3] There, the Idaho Supreme Court discussed who has standing to enforce the terms of a contract:

> It is axiomatic in the law of contract that a person not in privity cannot sue on a contract. "Privity" refers to "those who exchange the [contractual] promissory words or those to whom the promissory words are directed. Here, plaintiffs-appellants are not parties to the prior lease between Montierth and San Tan, and hence they have no privity and cannot sue to enforce the terms of that prior contract. A party must look to that person with whom he is in a direct contractual relationship for relief, in the event that his expectations under the contract are not met.

*Wing*, 107 Idaho at 272, 688 P.2d at 1177.

beneficiary status in order to have standing to sue for breach of contract."). "Privity is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff." *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App. 2007); *see also* Restatement (Second) of Contracts § 305, cmt. a (1981) (promisee of promise for benefit of beneficiary has same right to performance as any other promisee). Parkway ignores this well-established contract principle when it argues that Campbell lacks standing to enforce Parkway's promise.

The parties do not contest the magistrate court's finding that Parkway had an oral agreement with Campbell to "take care" of the loan. Nor do the parties contest the magistrate court's conclusion that the agreement created an enforceable third-party beneficiary contract. Because Campbell was a party to that contract, Campbell had standing to sue Parkway for its failure to follow through on its promise.

## 2. Campbell did not receive the "benefit of the bargain" with Parkway.

Parkway argues that the district court erred when it concluded that Campbell did not receive the benefit of the bargain. Parkway asserts that the agreement between it and Campbell was simply that the loan obligation would be "taken care of," and remarkably, Parkway contends that the language "taken care of" does not necessarily mean that Parkway agreed to pay off Campbell's loan. Instead, Parkway argues that language meant it could deal with the debt however it wanted, including "paying the amount immediately, paying the obligation in installment payments, negotiating a compromise settlement of the obligation, off-setting the amount against another debt, or simply waiting to see if the Foundation elected to pursue an action under its contract." Parkway then absurdly asserts that it "took care of" the obligation by declining to pay and waiting to see if the Foundation would enforce the obligation. But Parkway does not stop there. Parkway then irrationally reasons that by "taking care" of the obligation in this way, Campbell received the benefit of the bargain because she has not paid anything to the Foundation nor has she been required to do so. Remarkably, Parkway therefore reasons that Campbell received precisely what she bargained for: to be relieved of her loan obligation to the Foundation. Consequently, Parkway asserts there was no breach of any contractual terms between Campbell and Parkway. Parkway concludes that Campbell could only look to her own expectation that she would bear no liability on the obligation, which is precisely the "benefit" she received.

7

Campbell argues this assertion is just one example of Parkway's shifting attempts to avoid its obligation to Campbell, and that substantial and competent evidence in the record supports the magistrate's finding of fact that by promising to "take care of" the loan obligation, Parkway agreed to pay it. We agree.

The district court also saw through Parkway's absurd argument. Although the district court did not provide any reasoning for rejecting Parkway's argument that it essentially "took care of" Campbell's loan obligation, substantial and competent evidence from the record, and a little common sense, supports the court's conclusion. The agreement between Parkway and Campbell was that Parkway would "take care of" Campbell's loan from the Foundation if Campbell left BMH to come work for Parkway. Testimony in the record from Parkway's own agents indicates Parkway understood that "taking care of" Campbell's obligation meant that Parkway would pay off the loan. Indeed, Parkway's Director of Nursing testified that a decision was made to hire Campbell and to pay off her loan for her. When asked what it meant that Parkway would "take care of" Campbell's obligation, the Director of Nursing responded that it meant "Parkway would pay." Parkway's Administrator/CFO also testified that taking care of Campbell's obligation meant that if an obligation existed, Parkway would pay for it.

Furthermore, letters that both the Director of Nursing and the Administrator/CFO wrote indicate Parkway understood that it was to pay Campbell's loan obligation to the Foundation. Indeed, Hirschi's letter states that Hirschi "made [Parkway] aware of the scholarship that would have to be paid for [Campbell], to entice her to come." The letter further states that "when [Campbell's] scholarship came up, [Parkway] informed [Campbell that it] was aware of this and it was agreed that [Campbell's] scholarship would be paid off in full by Parkway Surgery Center." Similarly, McCracken's letter stated that "in efforts to attract and capture [Campbell's] commitment ... [Parkway] had offered repayment of any penalty caused by breach of [Campbell's] contract with [the Foundation]," and that the obligation "would be met and satisfied in full by Parkway Surgery Center." Campbell also testified that the agreement with Parkway was that Parkway would pay Campbell's loan obligation.

Given the substantial and competent evidence showing that both parties understood that "taking care of" Campbell's loan meant Parkway would pay for the loan, this Court is astonished that Parkway would attempt to argue on appeal that Campbell received "the benefit of her bargain." Such an argument is, at a minimum, baseless and disingenuous. The district court

8

correctly pointed out that Parkway failed to present evidence as to any actions that Parkway actually took to "take care of" the debt as promised. Indeed, it is undisputed that Parkway did not pay the loan obligation to Campbell or to the Foundation. Thus, Campbell has not received the benefit of the bargain and the district court did not err in so holding.

### 3. The statute of frauds does not apply in this case.

Parkway argues that the statute of frauds applies to the oral agreement between itself and Campbell and that because Campbell failed to put the agreement in writing, it was unenforceable. Once again, Parkway disregards well-established law.

Idaho Code section 9-505 requires certain agreements to be in writing to be enforceable. It states, in relevant part:

> In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:
>
> . . .
>
> (2) A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in section 9-506, Idaho Code.

Idaho Code section 9-506 lists exceptions to the general rule that agreements must be in writing to be enforceable. Relevant to this appeal, Idaho Code section 9-506(3) provides:

> A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing:
>
> . . .
>
> (3) Where the promise, being for an antecedent obligation of another, is made . . . upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person.

Therefore, Idaho Code section 9-506(3) contemplates enforcement of an oral promise to answer for the debt of another if the promisor obtains a direct benefit. *Johnson Cattle Co. v. Idaho First Nat. Bank*, 110 Idaho 604, 607, 716 P.2d 1376, 1379 (Ct. App. 1986).

Applying these principles, both the magistrate court and the district court concluded that the statute of frauds did not apply in this case. We agree. The agreement between Parkway and Campbell undoubtedly falls under Idaho Code section 9-506(3) as an exception to the statute of frauds. Parkway made an offer of employment to Campbell, which included a promise that Parkway would take care of Campbell's loan obligation to the Foundation if Campbell would come to work for Parkway. Parkway then obtained a direct benefit from making that promise to

9

Campbell: Campbell quit her job at BMH to work for Parkway. Indeed, testimony from the record indicates that the benefit of having Campbell come work for Parkway was what drove the initial promise. In fact, Parkway's Director of Nursing, Nanette Hirschi, testified "I remember one of them—I don't remember which one—saying 'well, we need to do whatever—whatever we need to do to get [Campbell].'" Thus, it is clear that Parkway obtained a benefit from the promise it made to Campbell; it secured an employee it apparently felt was worth doing whatever it took to get. Because Parkway's promise to answer for Campbell's loan obligation directly benefited Parkway, the promise falls under Idaho Code section 9-506(3) as an exception to the statute of frauds.

Parkway does not stop there. Parkway also argues that even if the above exception to the statute of frauds applies, Campbell was unable to enforce the promise because Parkway became the original obligor on the debt to the Foundation, and Campbell became a non-party to the agreement. Specifically, Parkway asserts, "[b]y promising to take care of Campbell's debt to the Foundation, the Idaho statute of frauds makes the obligation Parkway's own new original obligation." Parkway contends that because the exception created an original obligation for Parkway to the Foundation, Campbell's right to a cause of action was eliminated, and the Foundation was the proper party to pursue the breach of contract, not Campbell. Campbell responds that the law does not support an inference that Idaho Code section 9-506(3) erases Campbell's status as a party to her agreement with Parkway. We agree.

Parkway cites to no authority in support of its position that Campbell's rights to enforce the contract were extinguished once Parkway agreed to pay the loan. Once again, Parkway's argument completely ignores the well-established rule in contract law that even though a third-party beneficiary contract creates a duty to the beneficiary, the promisee still has a right to performance. Restatement (Second) of Contracts § 305, 307, cmt. b (1981); *see also,* Restatement (Second) Contracts § 305, cmt. a ("The promisee of a promise for the benefit of a beneficiary has the same right to performance as any other promisee."). Therefore, Parkway's argument that Campbell's right to enforce the contract was extinguished once Parkway agreed to "take care of" the loan is without merit. Because the agreement between Parkway and Campbell falls under an exception to the statute of frauds, the district court did not err in affirming the magistrate's decision so ruling.

**B. The district court erred in reforming the magistrate's judgment to grant Campbell specific performance.**

Parkway argues that the district court correctly determined that Campbell was not entitled to monetary damages on the breach of contract claim, but that it erred in reforming the magistrate court's judgment to grant Campbell specific performance.

After the trial, the magistrate court found for Campbell on her breach of contract claim and awarded her damages in the amount of the loan plus interest. Parkway appealed that decision, arguing that Campbell was not entitled to damages because she did not suffer any economic harm. The district court agreed, but remanded the case to the magistrate court to reform the judgment to grant Campbell specific performance.

This Court has held that an appellate court may uphold a trial court's decision if an alternative legal basis can be found to support it. *Hanf v. Syringa Realty, Inc.*, 120 Idaho 364, 370, 816 P.2d 320, 326 (1991). "This Court has generally held that where an order of a lower court is correct but is based upon an erroneous theory, the order will be affirmed upon the correct theory." *Anderson & Nafziger v. G. T. Newcomb, Inc.*, 100 Idaho 175, 179, 595 P.2d 709, 713 (1979). The district court was permitted to affirm the magistrate court's judgment on the correct legal theory if the magistrate's legal basis for supporting its judgment was incorrect. Thus, our first inquiry is whether the district court correctly concluded that damages were not available to Campbell.

The parties do not contest that the contract between Parkway and Campbell was a third-party beneficiary contract. Thus, the legal principles governing third-party beneficiary contracts offer guidance here. There is no Idaho case law addressing whether damages are available to a promisee when a promisor breaches a third-party beneficiary contract to pay the promisee's debt to a third party. Parkway cites to two Idaho cases for the proposition that a party must show it suffered economic injury before it can recover damages for a breach of an agreement to pay a debt. *See Melaleuca, Inc. v. Foeller*, 155 Idaho 920, 924, 318 P.3d 910, 914 (2014); *Bergkamp v. Martin*, 114 Idaho 650, 653, 759 P.2d 941, 944 (Ct. App. 1988). Parkway's reliance on those cases is misplaced. First, neither case involved a breach of an agreement to pay another's debt. Second, *Melaleuca* cites to *Bergkamp* for the proposition that a party must show it has been economically injured before it can recover damages for a breach of contract. *Melaleuca*, 155 Idaho at 924, 318 P.3d at 914. *Bergkamp*, in turn, cites to 5 A. Corbin, *Corbin on Contracts* § 1003 (1964), for that same proposition. *Bergkamp*, 114 Idaho at 653, 759 P.2d at 944. However,

11

turning to the relevant section in *Corbin*, there is nothing that states a party must show an "economic injury" before being able to recover damages. *See* 11 J. Perillo, *Corbin on Contracts* § 55.12 (2005) (formerly § 1003). Instead, Corbin states that a party need only show an "injury" to be able to recover damages, and that an injury denotes the fact that the breach of contract has put the complainant in a worse position than he would have been had there been no breach. *Id.* That section goes on to state that "injury" may consist of "disappointment in not receiving some expected addition to wealth *or other benefit* not previously existing." *Id.* (emphasis added). Thus, we want to clarify that, at least for purposes of third-party beneficiary contracts involving a promise to pay another's debt, it is not necessary to show an "economic injury" before a plaintiff can recover damages for a breach. Indeed, the Restatement and ample case law from other jurisdictions support this conclusion and squarely address the issue of whether a promisee is entitled to damages for a breach of a promise to pay a debt. We are persuaded to follow the reasoning from those sources as outlined below.

First, Section 305 of the Restatement (Second) of Contracts, which addresses overlapping duties owed to a promisee and a beneficiary, recognizes that a promise in a third-party beneficiary contract creates a duty in the promisor to the promisee to perform the promise even though he also has a similar duty to the third-party beneficiary. Restatement (Second) of Contracts §305(1) (1981). Thus, even though the contract creates a duty to the beneficiary, the promisee has a right to performance. Restatement (Second) of Contracts § 305, 307, cmt. b. The comments to section 305 offer further guidance:

> ***a. The promisee's right.*** The promisee of a promise for the benefit of a beneficiary has the same right to performance as any other promisee, whether the promise is binding because part of a bargain, because of his reliance, or because of its formal characteristics. If the promisee has no economic interest in the performance, as in many cases involving gift promises, the ordinary remedy of damages for breach of contract is an inadequate remedy, since only nominal damages can be recovered. In such cases specific performance is commonly appropriate. See § 307. *In the ordinary case of a promise to pay the promisee's debt, on the other hand, the promisee may suffer substantial damages as a result of breach by the promisor. So long as there is no conflict with rights of the beneficiary or the promisor, he is entitled to recover such damages. See § 310.*

> **Illustrations:**

>> 1. In consideration of A's promise to transfer to his brother C A's interest in his mother's estate, A's father B promises A to pay a like amount to C. A makes the promised transfer, but B dies without performing his

promise. A may maintain a suit for specific performance against B's personal representative.

2. A owes C an unliquidated sum. In consideration of $100 paid to B by A, B promises A to pay C whatever is due. B breaks his promise, and A pays C a reasonable sum in discharge of C's claim. A can at his election recover from B either $100 or the amount paid C.

. . .

***b. Conflicting claims and double liability.*** In the ordinary case of a promise to pay a debt owed by the promisee to a beneficiary, a single payment by the promisor will discharge both his duty to the promisee and his duty to the beneficiary. But a breach by the promisor can damage both promisee and beneficiary in the full amount of the debt. The promisor and his other creditors are entitled to protection against such doubling of liability so long as the injuries to both promisee and beneficiary can be redressed by a single payment.

**Illustrations:**

4. A owes C $100. For consideration B promises A to pay the debt to C. On B's breach A may obtain a judgment for $100 against B. But the court may protect B against double payment by permitting joinder of C, by an order that money collected by A is to be applied to reduce A's debt to C, by giving B credit on the judgment for payments to C which reduce A's obligation, or by enjoining enforcement of the judgment to the extent of such payment.

Restatement (Second) of Contracts, § 305, cmt. a, b (emphasis added). Furthermore, section 307 of the Restatement (Second) of Contracts, provides:

***c. Promise to pay the promisee's debt.*** Where the promised performance will satisfy an obligation of the promisee to pay money to the beneficiary, the promisee may suffer substantial damages as a result of breach. *He is entitled to recover such damages so long as there is no conflict with rights of the beneficiary or the promisor.* But the promisee as surety for the promisor is not permitted to compete with the beneficiary for the assets of the promisor, and the promisor is ordinarily entitled to protection against enforced double liability. See §§ 305, 310. These difficulties can be avoided by specific performance of the surety's right to exoneration. See Restatement of Security § 112.

Restatement (Second) of Contracts, § 307, cmt. b, c (emphasis added). Thus, the Restatement contemplates that in third-party beneficiary contracts involving a promise to pay another's debt, a promisee is entitled to damages in the amount of the debt if the promisor fails to pay that debt.

Some of our sister courts have followed the Restatement approach and have allowed a promisee to recover damages for a breach of an agreement to pay another's debt. For instance, in *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685 (Tex. 1981), the parties contracted in association

with the sale of a business that Johnson Group would pay certain debts of the business. *Id.* at 686. When Johnson Group failed to pay the debts, Mead brought suit for a breach of contract and sought damages for the unpaid debts. *Id.* The trial court awarded Mead damages for the debt that Johnson Group had agreed, but failed, to pay. *Id.* Johnson Group appealed to the court of civil appeals, which reversed the trial court's award of damages, reasoning that Mead could only recover damages if she first paid the debts to the third parties. *Id.* The Texas Supreme Court reversed, reasoning that if Johnson Group were relieved of paying the debt, the result would be inequitable and would unjustly enrich Johnson Group because it received valuable assets from Mead in exchange for its promise to pay Mead's debts. *Id.* at 689. The Texas Supreme Court therefore held that a promisee is not required to pay debts a promisor agreed, but failed, to pay before the promisee can recover damages. *Id.* In so holding, the court noted, consistent with the Restatement's approach, that courts can protect against double recovery by directing the promisee to apply the damages to the debt. *Id.*

The holding in *Mead* is reflected in several cases from other jurisdictions that have addressed the damages available for a party's failure to pay another's debt pursuant to a contract. For instance, in *Fairfield v. Day*, 51 A. 263 (N.H. 1901), the New Hampshire Supreme Court held that where a defendant failed to pay plaintiff's outstanding bills as promised, "recovery may be had as soon as there is a breach of the contract, and the measure of the damages is the full amount of the accrued liability." *Id.* at 263. Similarly, the Massachusetts Supreme Court has held that "a promise to pay a debt due from the promisee, even where it has not been paid by [the promisee], is one upon which an action may be maintained and damages recovered to the amount of such debt." *Furnas v. Durgin*, 119 Mass. 500, 507 (1876). The Minnesota Supreme Court has also recognized that in a contract to pay and discharge a plaintiff's debt, "authorities are fairly in accord, or at least it is the prevailing doctrine, that one in the position of the plaintiff may recover, and that the amount of the debt is the measure of [the plaintiff's] damages." *Heins v. Byers*, 219 N.W. 287, 288 (Minn. 1928). In an earlier case dealing with the same issue, the Minnesota Supreme Court explained:

> The defendant's undertaking was not one of indemnity. It was an affirmative, unconditional promise to the plaintiff, upon a valid consideration, to pay, within a specified time, a definite sum of money to a third party-the state- for his benefit. Though, within the doctrine of the New York cases upon this subject, as well as our own, the state might have maintained an action against defendant upon a breach of its agreement, it is well settled, both upon principle and authority, that

14

the defendant also remained liable to plaintiff, upon its promise, by privity of contract; and a cause of action accrued in favor of the latter, which became complete immediately upon its breach by the failure of the defendant to make the payment at the stipulated time. It is not necessary for the promisee in such a case to discharge the debt before asserting his right of action against the promisor, growing out of the breach of his own agreement. The measure of damages in a case of this kind is the amount of the debt agreed to be paid.

*Merriam v. Pine City Lumber Co.*, 23 Minn. 314, 322-23 (1877).

Similarly, the California Supreme Court has held that the measure of a promisee's damages for a promisor's breach of an agreement to pay the promisee's debt is the amount of the debt, regardless of whether the promisee "has already paid the creditors or must yet inevitably pay them." *Meyer v. Parsons*, 62 P. 216 (1900). There, the court reasoned that "there is no question but that [the plaintiff] is yet liable to the creditors, and the extent of his right of recovery is not affected by the possibility that the creditors may not exact all that they are entitled to in discharge of their claims ... plaintiff can recover the full amount, even though he has not paid it himself." *Id.* at 217. The cases illustrated above are just a few of the many that have held that a promisee may recover damages for a promisor's breach of an agreement to pay a debt. *See also Stout v. Folger*, 34 Iowa 71, 74 (1872) ("The authorities agree that upon an undertaking *to pay* a debt due a third person, the plaintiff may maintain an action without showing that he has paid the debt.") (emphasis in original); *Wright v. Chapin*, 33 N.Y.S. 1068, 1071 (Gen. Term 1895) (holding that the measure of damages for a breach of a covenant to pay money to a third party, thereby relieving the plaintiff from liability to that third party, is the amount of the liability from the plaintiff to the third party). We agree with the reasoning in the Restatement and in the line of cases discussed above. We therefore hold that a party can recover damages in an action for breach of a third-party contract to pay another's debt.

Here, as discussed above, Parkway breached its agreement with Campbell when it refused to pay Campbell's loan. Consequently, Campbell was entitled to damages in the amount of the outstanding loan. Thus, the district court erred when it reversed the magistrate's decision so holding. We therefore reverse that aspect of the district court's decision and remand to the district court to reinstate the damage award plus any accrued interest. We note that the court can protect against double recovery by ordering Campbell to pay the money to BMH upon receipt. Because we conclude that damages were appropriate, we need not address the issue of specific performance.

**C.      Attorney fees were properly awarded to Campbell both at trial and on appeal.**

Parkway argues that the district court erred (1) in affirming the magistrate's award of attorney fees to Campbell; and (2) in awarding attorney fees to Campbell on appeal. The magistrate court awarded Campbell attorney fees pursuant to Idaho Code section 12-120(3) and Idaho Code section 12-120(1). The district court affirmed the magistrate's award of attorney fees and also awarded Campbell attorney fees on appeal pursuant to Idaho Code section 12-120(1).

The trial court has discretion to award attorney fees and costs; that award is subject to review for an abuse of discretion. *Magleby v. Garn*, 154 Idaho 194, 196, 296 P.3d 400, 402 (2013). When we consider whether a trial court abused its discretion, the standard is whether the court perceived the issue as discretionary, acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available, and reached its decision by an exercise of reason. *Id.* at 196–97, 296 P.3d at 402–03.

At the time this action was filed, Idaho Code section 12-120(3) allowed the prevailing party in a commercial transaction to recover attorney fees. Actions brought for breach of an employment contract are considered commercial transactions under Idaho Code section 12-120(3). *Willie v. Bd. of Trustees*, 138 Idaho 131, 136, 59 P.3d 302, 307 (2002). Because Campbell was the prevailing party in a breach of employment contract action, the magistrate court did not abuse its discretion in awarding attorney fees to Campbell under Idaho Code section 12-120(3). Consequently, the district court did not err in affirming that award.

Parkway also asserts that the district court erred in awarding attorney fees to Campbell on appeal. The district court awarded attorney fees to Campbell on appeal pursuant to Idaho Code section 12-120(1). When this action was filed, Idaho Code section 12-120(1) provided, in pertinent part:

> [I]n any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees. For the plaintiff to be awarded attorney's fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action….

The district court properly awarded attorney fees to Campbell under Idaho Code section 12-120(1). The record reflects that Campbell presented to Parkway a demand for tuition reimbursement in the amount of $6,800.00, together with attorney fees in the amount of

$3,000.00 on June 15, 2005. This was more than ten days before Campbell filed suit against Parkway, which was October 17, 2005. Furthermore, Campbell pleaded less than $25,000.00 in her second amended complaint. Finally, Campbell was the prevailing party at trial. Campbell meets all of Idaho Code section 12-120(1)'s requirements. Thus, the district court did not err when it awarded attorney fees to Campbell on appeal pursuant to Idaho Code section 12-120(1).

**D. Campbell is entitled to attorney fees on appeal.**

Both parties request attorney fees on appeal. Parkway requests attorney fees under Idaho Code section 12-120(3) and Idaho Appellate Rule 41. Campbell requests attorney fees pursuant to Idaho Code section 12-120(3) and Idaho Code section 12-120(1).

As discussed above, Idaho Code section 12-120(3) allows the prevailing party in a commercial transaction to recover attorney fees, and actions brought for a breach of an employment contract are considered commercial transactions. This case involved a breach of an employment contract, and Campbell is the prevailing party on appeal. Therefore, Campbell is entitled to attorney fees.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's decision in part, reverse in part, and remand for proceedings consistent with this opinion. Costs and attorney fees to Campbell.

Justices W. JONES AND HORTON, **CONCUR.**

EISMANN, Justice, specially concurring.

I concur in the majority opinion, but simply write to illustrate the absurdity of Parkway's intransigence. Because it stubbornly refused to pay its $6,800 debt to Campbell, she was awarded $48,989.62 in attorney fees and court costs in the magistrate court and $18,429.23 in attorney fees and costs in the district court. Thus, Parkway will have to pay an additional sum of $67,418.85, plus interest, to Campbell in its frivolous attempt to avoid a $6,800 debt. In addition, it has undoubtedly paid its own counsel, and this Court will award Campbell additional attorney fees and costs on this appeal.

J. JONES, Justice, specially concurring.

I fully concur in the Court's opinion, but feel it appropriate to mention the counter-productive results of Parkway's deplorable conduct in this case. Throughout the proceedings, Parkway has professed not to understand what "take care of" means. I would expect that when several people are eating at the same table at a restaurant in Blackfoot and one says he will "take

care of" the bill, everyone at the table understands what he means. It means that he will pay the bill, rather than sitting around for years hoping that the waitperson will never bring it. When sued by Campbell, Parkway filed a cross-claim against Arthur McCracken, who had been authorized by the Board of Directors to make the deal with Campbell, claiming that he was unauthorized to make the deal and should have to bear the consequences of any judgment in favor of Campbell. The magistrate judge saw through this tawdry business, granting judgment against Parkway on the cross-claim at the same time he granted judgment in favor of Campbell on her complaint.

The magistrate awarded Campbell attorney fees in the amount of $48,551.73 and awarded McCracken fees in the amount of $9,855. Parkway filed a frivolous appeal of Campbell's judgment, which the district court rebuffed, awarding Campbell $18,429.23 in attorney fees. This Court will also award attorney fees to Campbell for Parkway's meritless appeal. While I.R.C.P. 54(e)(3) does not specifically factor in deplorable conduct as an additional matter to consideration in a fee award, in addition to time and labor, it is likely that such a factor could be considered under factor (L) of the rule.

Thus, Parkway incurred monetary indebtedness in the sum of $76,835.96, plus (1) interest, (2) costs of suit, (3) fees awarded by this Court, and (4) the fees of its own attorneys, in its quest to beat a $6,800 contractual obligation. In addition to tying up court time that could have been devoted to meritorious matters, Parkway's conduct has undoubtedly taken a toll on Campbell, who only wanted Parkway to honor its contractual obligation. It is unfortunate that she had to put up with this course of misconduct. The fee awards may help to relieve the burden and, hopefully, will cause Parkway to conform to more acceptable behavioral norms in the future.